**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Albert B. Ratner,** | **Case No.   1:18-cv-02605** |
| *Plaintiff,* | **Judge Christopher A. Boyko** |
| *v.* | **DEFENDANT FOREST CITY REALTY TRUST, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER INJUNCTIVE RELIEF** |
| **Forest City Realty Trust, Inc.,** | |
| *Defendant.* | |

Plaintiff is asking this Court, less than 48 hours before a scheduled stockholder vote, to delay and potentially derail a $6.9 billion merger (over $11 billion including debt) that offers thousands of Forest City Realty Trust, Inc. stockholders a roughly $1.4 billion premium for their stock.  There are no grounds for granting the extraordinary relief that plaintiff seeks.  Plaintiff has not come close to showing a likelihood of success on the merits of his claims, nor has he established the equitable elements required for injunctive relief.  His motion should be denied.

This eleventh-hour, fire-drill litigation arises from a proposed merger of Forest City with an affiliate of Brookfield Asset Management, Inc.  The transaction was announced on July 31, 2018, and offers Forest City stockholders a 26.6% premium for their shares over the closing price of the company's stock on the last trading day before news of the potential deal was reported.  On September 21, Forest City publicly filed a preliminary proxy statement with the SEC containing extensive disclosures relating to the merger—including all of the disclosures that plaintiff now challenges.  Forest City filed its definitive proxy statement on October 12—more

than four weeks ago—and mailed it to stockholders.  The company announced at that time that it would hold a special meeting on November 15 at which time stockholders would have the opportunity to vote on whether to take the proposed deal with Brookfield.

On November 12, more than three months after the merger was announced, six weeks after the preliminary proxy was filed, and a month after the definitive proxy was mailed, plaintiff—a purported ~1% stockholder who opposes the merger—filed this action seeking to enjoin Forest City from proceeding with tomorrow's stockholder vote.  Plaintiff then waited an additional 14 hours before filing this motion for a TRO.  Plaintiff offers no excuse for his egregious delay, which forecloses his claim for relief.  Plaintiff was well aware of this merger and the facts and circumstances surrounding the merger for months.  Indeed, he freely admits that he could have pursued a proxy contest and elected not to do so, which he now regrets.  His tactical choice to wait until two days before the scheduled stockholder vote to file this belated TRO for his own strategic reasons precludes the relief that he now seeks.

Wholly apart from his delay, Plaintiff has failed to satisfy *any* of the elements for obtaining the extraordinary remedy of a TRO.  First, plaintiff has not shown any likelihood of success on his claims.  Plaintiff does not identify a single statement in Forest City's 125-page proxy statement that he claims is false; rather, he offers a scattershot list of purported "omissions" he says render the proxy misleading.  But plaintiff fails to show that any of these alleged "omissions" are material or otherwise required to be disclosed under the federal securities laws—indeed, his TRO brief does not cite a *single case* in support of his assertion that additional information must be disclosed.  *See* TRO Br. at 14-16.  And in any event, contrary to

2

plaintiff's assertions, *even a cursory review of Forest City's proxy materials shows that the vast bulk of information plaintiff seeks has already been disclosed. See* Appendix A.

Plaintiff also fails to establish any of the equitable elements for obtaining a TRO. As courts in this district have held, plaintiff's delay in seeking an injunction is perhaps "the most convincing evidence that [he] will not experience irreparable harm . . . if [a shareholder] meeting is allowed to go forward." *NACCO Indus., Inc.* v. *Applica Inc.*, 2006 WL 3762090, at *8 (N.D. Ohio Dec. 20, 2006). And while plaintiff claims that defendant "will suffer no harm if the injunctive relief [he] seeks is imposed," TRO Br. at 18, that is not true. The Forest City stockholder meeting date has been publicly announced, and the company has mailed the proxy statement to stockholders and begun soliciting votes. A judicial order enjoining the vote would create substantial uncertainty that could threaten the $6.9 billion transaction, destabilize the company's stock price, and impose harm on thousands of third-party public stockholders. There is no basis to grant the injunction plaintiff seeks and his motion should be denied.

## I. Plaintiff's Laches Bars Any Equitable Relief.

A plaintiff's request for equitable relief will be barred by laches where "(1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay." *Am. Civil Liberties Union of Ohio, Inc.* v. *Taft*, 385 F.3d 641, 647 (6th Cir. 2004). That is precisely the situation here.

Plaintiff has known of his claims for weeks. As set forth above, the merger agreement was made public on July 31, over three months ago.[1] Forest City filed the preliminary proxy statement, which contained all of the disclosures that plaintiff claims are misleading, six weeks

---

[1] https://www.sec.gov/Archives/edgar/data/1647509/000119312518233455/d582102dex991.htm

ago, on September 21.[2]  Forest City filed the Proxy Statement, which again included all of the challenged disclosures and which announced that the stockholder vote would occur November 15, over one month ago, on October 12.[3]  And two weeks ago, on October 30, Forest City filed its Form 10-Q disclosing third quarter earnings, which was incorporated by reference into the Proxy Statement.[4]  *See* App. A at 2.  Indeed, Plaintiff has been publicly advocating against the merger for weeks.  On October 25, Plaintiff filed an open letter to stockholders saying he would vote against the transaction and urging them to reject the transaction.  Compl. Ex. D.

Yet despite all this, Plaintiff waited until *60 hours* before the stockholder meeting to file his complaint.  Worse, even after filing his complaint, plaintiff waited an additional 14 hours— more than 20% of the available time—to file this motion for emergency relief, leaving Forest City and this Court less than *48 hours* to respond to and decide the motion.

That is exactly the kind of conduct that courts in the Sixth Circuit have held constitutes laches and bars equitable relief.  In *NACCO*, 2006 WL 3762090, at *5, the plaintiff filed its TRO nine days before the planned shareholder meeting and a month and a half after it learned of the claims.  The Court found that the "eleventh hour" filing (which involved seven more days between the motion and the vote than here) satisfied the delay element of laches.  *Id*. at *10. Specifically, the court found that the delay prejudiced defendants by imposing "higher transaction and legal costs" and increasing the likelihood the merger would not occur.  *Id*. at *9.

The court reached a similar result in *Advocacy Org. For Patients & Providers v. Mercy Health Servs*., 987 F. Supp. 967 (E.D. Mich. 1997).  In that case, the court found that the

---

[2] https://www.sec.gov/Archives/edgar/data/1647509/000119312518280092/d576562dprem14a.htm
[3] https://www.sec.gov/Archives/edgar/data/1647509/000119312518298438/d576562ddefm14a.htm
[4] https://www.sec.gov/Archives/edgar/data/1647509/000164750918000080/fcrt-9302018x10q.htm

plaintiffs had been on notice of the proposed merger at issue for at least three months, yet waited until the eve of the merger to file a lawsuit and seek injunctive relief blocking the transaction. *Id.* at 970.  The court denied the requested TRO, noting that the "plaintiffs [we]re attempting to throw a monkey wrench into the merger at a very late stage in the game."  *Id.*  As the court explained, plaintiffs' delay was "inexcusable," and there was "absolutely no reason the instant lawsuit could not have been filed earlier" or why the plaintiffs should have "waited until the eleventh hour to file their 98-page complaint and request for a TRO."  *Id.*  The court also found prejudice, reasoning that "[i]f the injunction is granted improvidently, defendants will have to renegotiate the merger, and perhaps the merger will not be consummated."  *Id.*

Just as in *NACCO* and *Advocacy Org.*, plaintiff can offer no legitimate reason why this action was not filed weeks ago.  And, in fact, no legitimate reason is plausible.  The only possible explanation is the obvious one—to game the system by depriving Forest City of adequate time to respond and depriving the Court of adequate time to fully consider the issues. That kind of tactical behavior should not be tolerated, and plaintiff's motion should be denied.

## II.    Plaintiff Has Failed to Satisfy the Elements of a TRO.

Plaintiff's claim fails all four prongs of a TRO:  (1) whether the movant has demonstrated a likelihood of success on the merits—he has not, as he points to no material omissions or misstatements in Forest City's proxy statement; (2) whether the movant will suffer irreparable harm if the injunction is not issued—he will not, as his main complaint concerns the effect of dividends on the deal consideration, which is a damages issue, not a basis for injunctive relief; (3) whether the injunction will cause substantial harm to others if it is issued—plaintiff's requested relief will injure Forest City and its shareholders; and (4) whether granting the

5

injunction will serve the public interest—it will not because it interferes with shareholders ability to participate in governance of their entity.  *See Tenn. Scrap Recyclers Ass'n.* v. *Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).  Plaintiff must provide clear and convincing evidence of each of these factors.  *Garlock, Inc. v. United Seal*, 404 F.2d 256, 257 (6th Cir. 1968).  Plaintiff's complaint fails to meet this heightened requirement and his motion should be denied.

### A.  Plaintiff Has No Hope of Success on the Merits.

The entire basis for plaintiff's motion is the supposed omission by Forest City of certain information in its Proxy Statements.  This theory suffers from an unavoidable flaw:  The supposedly omitted information was all either disclosed or was not required to be disclosed.

*First*, as detailed in Appendix A, the vast majority of the allegedly omitted facts is in fact already in the Proxy Statement or incorporated by reference therein.  A proxy cannot be misleading by omission if the allegedly omitted material was disclosed elsewhere within the proxy.  *See United Paperworkers Int'l Union* v. *Int'l Paper Co.*, 985 F.2d 1190, 1198-99 (2d Cir. 1993) (shareholders have constructive knowledge of "data sent to shareholders by a company").

*Second*, as for the information that was not disclosed, Forest City was under no requirement to disclose these facts under § 14(a) of the Exchange Act, or Rule 14(a)–9 promulgated thereunder.  By its plain terms, Rule 14a-9 does not mandate the disclosure of any particular information.  Instead, it prohibits the solicitation of proxies through materially "false or misleading" statements.  *See* Rule 14a-9(a), 17 C.F.R. § 240.14a-9(a); *see also Seinfeld v. Becherer*, 461 F.3d 365, 369-70 (3d Cir. 2006) (distinguishing Rule 14a-9, which targets false or misleading disclosures, from Schedule 14A, "which specifies the information required in a proxy statement"); Rule 14a-3(a), 17 C.F.R. § 240.14a-3(a) (requiring that proxy statement "contain[]

6

the information specified in Schedule 14A (§ 240.14a-101)").  "Disclosure of an item of information is not required [under Section 14(a) and Rule 14a-9] ... simply because it may be relevant or of interest to a reasonable investor."  *Resnik* v. *Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).  Instead, omissions are actionable under Rule 14a-9 only "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading."  *Local 295/Local 851 IBT Emp'r Group* v. *Fifth Third Bancorp*, 731 F. Supp. 2d 689, 716 (S.D. Ohio 2010).

Here, Plaintiff does not *contend* that any SEC rule required disclosure of the supposedly omitted items.  Thus, to state a claim, "federal courts have held that in order to sufficiently allege the elements of an omission claim under § 14(a) ... the plaintiff must identify a precise 'statement' in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact."  *Louisiana Mun. Police Employees Ret. Sys.* v. *Cooper Indus. plc*, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012); *accord Kugelman* v. *PVF Capital Corp.*, 972 F. Supp. 2d 993, 999 (N.D. Ohio 2013).

Plaintiff's omission theory suffers from other fatal flaws.  Plaintiff asks for a list of "reasons" and asks "why" things were done as they were, but "it is not enough simply to pose questions that are not answered in the proxy statement."  *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 736 (Del. Ch. 1999).  It is also well-established that disclosure of speculative facts is not required.  *See Basic Inc.* v. *Levinson*, 485 U.S. 224, 232 (1988) ("Where, on the other hand, the event is contingent or speculative in nature, it is difficult to ascertain whether the 'reasonable investor' would have considered the omitted information significant at the time").  Further,

defendant is not required to disclose information answering all of plaintiff's "why" questions or "give all the reasons" demands.

Plaintiff's complaints about what is bolded or not is not a disclosure claim. Emphases are not facts. For an omitted fact to be "material," there must be "a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976). Thus, an omitted fact is material only if a reasonable stockholder would conclude that it "significantly alter[s] the 'total mix' of information" and has "'a significant propensity to affect the voting process.'" *Id.* (quoting *Mills* v. *Elec. Auto-Lite Co.*, 396 U.S. 375, 384 (1970)). What matters is that all of the facts that were disclosed in the Proxy Statement were not themselves misleading. The proxy statement is over 125 pages long (before considering the exhibits). Forest City went to unprecedented lengths to provide the five dissenting directors an opportunity to share their rationale in the proxy statement.

At the core, plaintiff simply disagrees with the business judgment of the Forest City board when it determined to agree to the merger. He may not bootstrap a debate about the board's business judgment into a federal securities claim. *See Bond Opportunity Fund* v. *Unilab Corp.*, 2003 WL 21058251, at *9 (S.D.N.Y. 2003) (dismissing §14(a) claims, noting that disclosure claims "regarding the auction process" had "more weight as complaints about the way the Board conducted the process, than about the disclosure related to that process.").

### B. Plaintiff Has Not Shown Any Irreparable Harm.

Plaintiff has not shown any irreparable harm. His primary grievance concerns the amount he would get in the merger—a classic damages issue that can be addressed in a post-closing damages claim. Plaintiff has an adequate remedy at law and thus there is no basis for

injunctive relief.  Irreparable harm is a required element for a TRO, and that element cannot be met if there is a "possibility that adequate compensatory or other corrective relief will be available at a later date."  *McGee* v. *Armstrong*, 2011 WL 6756256, at *4 (N.D. Ohio Dec. 23, 2011) ("Even if plaintiff were able to show likelihood of success on the merits, for a TRO to issue (in order to maintain the status quo), he must also show that he will suffer irreparable harm absent immediate injunctive relief.  'When courts consider irreparable harm, "[t]he key word ... is irreparable," and "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against [the] claim.").

Here, Plaintiff could pursue a post-closing damages claim for his Section 14(a) claim. Such claims are not unusual, and there is no impediment to Plaintiff filing such a claim.  *See NECA-IBEW Pension* v. *Precision Castparts Corp.*, 2017 WL 4453561 (D. Or. Oct. 3, 2017) (denying motion to dismiss post-closing 14(a) damages claim), *report and recommendation adopted*, 2018 WL 533912 (D. Or. Jan. 24, 2018); *Smith* v. *Robbins & Myers, Inc.*, 969 F. Supp. 2d 850 (S.D. Ohio 2013) (same); *In re Siliconix Inc.*, 2001 WL 716787, at *17 (Del. Ch. June 19, 2001) ("Damages can be awarded and, indeed, have been awarded after a trial that followed denial of a preliminary injunction application addressed to halting a tender offer.").[5]

---

[5] *See Stein* v. *Almost Family, Inc.*, 2018 U.S. Dist. LEXIS 46910 (W.D. Ky. Mar. 22, 2018) (denying a motion to enjoin stockholder vote on proposed merger because Form S-4 filed with the SEC was allegedly misleading).  The court rejected the plaintiff's contention that the failure to disclose material information "has long been recognized" as constituting *per se* irreparable harm in the context of mergers such as this one, noting that "the focus regarding whether Plaintiff's hypothetical damages would be fully compensable should not be on the shareholder's decision itself, but rather on the damages flowing from casting an uninformed vote."  *Id.* at *22-24.  The court found that the plaintiff had not demonstrated that the "danger of irreparable harm that is 'certain and great'' from casting an uninformed vote existed.  *Id.* at *25.  Instead, "the ultimate damages Plaintiff would be seeking in a case like this after a merger went through would be the wrongful undervaluation of the stock at issue, if there was one."  *Id.*

Plaintiff argues that damages are speculative and not adequate.  But as noted above, people commonly bring Section 14(a) damages cases.  Experts value damages in all sort of securities cases, including claims of misleading registration statements under Section 11 of the Securities Act or similar types of disclosure claims.  *E.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) (citing "estimated damages" calculated by plaintiff's expert for Section 11 and 12 claims).  This case is no different, especially given plaintiff's core allegation that the proxy statement misdescribes the value of the merger consideration by a specific amount.  *See, e.g.*, Compl. ¶¶ 9, 61-67.  Consistent with this reality, courts have denied injunctive relief.

Courts have recognized this and denied injunctive relief in Section 14 cases on the basis that a post-closing damages claim was available as an adequate remedy at law.  In *Leone* v. *King Pharm., Inc*., No. 2:10-CV-230, 2010 U.S. Dist. LEXIS 121553 (E.D. Tenn. Nov. 16, 2010), Plaintiff alleged violations of Sections 14 of the Exchange Act seeking to enjoin the proposed merger.  The Court held "the ultimate question to be decided in this litigation is the per share value of the common stock, a determination that is hardly more speculative after the sale than before.  Thus, it appears that the shareholders will have an adequate remedy at law if the transaction at issue here is ultimately approved at a price which plaintiff can later prove to be inadequate."  *Id.* at *17.[6]  *See also Botton* v. *Ness Techs., Inc*., 2011 U.S. Dist. LEXIS 85950, at

---

[6] Additionally, in terms of irreparable harm, the *Leone* court noted that "while the court in *In re: Netsmart Technologies, Inc. Shareholders Litig.,* 924 A.2d 171 (Del. Ch. 2007) did observe that 'this court has typically found a threat of irreparable injury to exist when it appears stockholders may make an important voting decision on inadequate disclosures,' the Delaware court clearly distinguished between the case where the refusal to grant an injunction presents the possibility that a higher, pending, rival offer might go away forever and the case where, as here, no rival bid

*9 (D.N.J. Aug. 4, 2011) (holding, in Section 14(a) case, that "[i]ndeed, legal remedies exist . . . if the Proposed Transaction is finalized by the shareholders"); *Wilson* v. *Great Am. Indus., Inc.*, 979 F.2d 924, 930 (2d Cir. 1992) (holding that violation of Section 14(a) in proxy supported a cause of action for money damages post-closing of the merger because the plaintiffs established that a "procured vote" for the merger denied them their appraisal rights); *Slade* v. *Shearson, Hammill & Co., Inc.*, 356 F. Supp. 304, 306 (S.D.N.Y. 1973) (potential loss of stock value "fully compensable by monetary damages"); *Sierra Military Health Services, Inc.* v. *United States*, 58 Fed. Cl. 573, 582 (Fed. Cl. 2003) (potential harm from, inter alia, a decrease in stock prices were primarily monetary and "not the types of harm that constitute irreparable injury"); *Northwest Indus., Inc.* v. *B.F. Goodrich Co*., 301 F. Supp. 706, 711 (N.D. Ill. 1969) (diminished economic value of shares could be addressed through damage award).  "No question has been raised, much less evidence presented, to cast doubt on [acquiror's] solvency or ability to satisfy a damages award.  The plaintiffs therefore have not shown any threat of irreparable harm."  *In re CNX Gas Corp. S'holders Litig.*, 4 A.3d 397, 420 (Del. Ch. 2010).

Plaintiff therefore has an adequate remedy at law.  Moreover, plaintiff's own inexcusable delay is perhaps "the most convincing evidence that [he] will not experience irreparable harm . . . if [a shareholder] meeting is allowed to go forward."  *NACCO Indus.*, 2006 WL 3762090, at *8.  Indeed, "delay alone may justify denial of a preliminary injunction."  *Citibank, N.A.* v. *Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *see Century Time, Ltd*. v. *Interchiron, Ltd*., 729 F. Supp. 366, 368 (S.D.N.Y. 1990) (finding delay barred injunctive relief since "[w]e simply cannot tolerate

---

is on the table.  In the latter case, Delaware courts have often found it imprudent to enjoin 'the only deal on the table, when the stockholders can make that decision for themselves.'"

tactical maneuvering, in injunction matters, whereby parties sit back and wait for what they

believe to be timing most injurious to the procedural fairness for their adversaries").[7]

### C.  There Is A Risk Of Harm To The Company And Its Shareholders If The Vote Is Delayed And No Showing Of A Public Benefit.

An axiom relating to merger transactions and other deals is that "time is the enemy of all

deals."  Mark Suster, *Time is the Enemy of All Deals*, Business Insider (Feb. 26, 2010).[8]  Here,

there are at least three enormous risks to Forest City and its shareholders if they lose their

valuable right to a timely vote:

- Delaying the vote for any period means denying thousands of stockholders the economic benefits of the proposed transaction on a timely basis (and cash received later will be less valuable than cash received earlier).

- A temporary delay of the shareholder vote serves no purpose, but only places the deal in increasing jeopardy.  Any delay in closing necessarily increases the risk of changed economic circumstances, which could result in a "Material Adverse Effect" under the terms of the Merger Agreement, thereby giving Brookfield a right to terminate the deal.

- Delaying the vote for any period means additional time during which a changes in the debt markets might take place that would impede or prevent Brookfield from obtaining the $4.25B of debt financing it needs to close the deal, which would deprive shareholders

---

[7] Courts of equity frequently decline to interfere on behalf of a complainant whose attitude is unconscientious in respect of the matter concerning which it seeks relief.  *Nat'l Fire Ins. Co. v. Thompson*, 281 U.S. 331, 338 (1930).  "[A]n unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm."  *Allied Erecting* v. *Genesis* Equip. & Mfg., Inc., 511 F. App'x 398, 405 (6th Cir. 2013); *Forry, Inc.* v. *Neundorfer, Inc*., 837 F.2d 259, 267 (6th Cir. 1988) (courts consider delay in seeking relief when considering whether the plaintiff has met his burden to show irreparable harm); *R.M.&G. Products* v. *R.E.F. Golf Co*., 1994 WL 653531 at 3 (N.D. Ohio June 21, 1994) ("The fact that RMG delayed over one year in filing its motion for preliminary injunction undercuts any argument of RMG regarding irreparable harm."); *Wells Fargo* v. *WhenU.com, Inc.,* 293 F. Supp. 2d 734, 771-72 (E.D. Mich. 2003) ("Plaintiffs' delay in seeking a preliminary injunction undermines their allegation of irreparable harm."); *Young* v. *Lumenis*, *Inc*., 301 F. Supp. 2d 765, 772 (S.D. Ohio 2004) ("[A] substantial period of delay 'militates against the issuance of a preliminary injunction.'").

[8] *Advocacy Org.* v. *Mercy Health Servs*., 987 F. Supp. 967, 970 (E.D. Mich. 1997)  ("Prejudice to the defendant, exists here also.  If the injunction is granted improvidently, defendants will have to renegotiate the merger, and perhaps the merger will not be consummated.").

of the transaction altogether.  This is a risk Plaintiff cannot foist upon other shareholders to serve his personal desires.

Any delay will also increase employee anxiety, cause workplace disruptions and lower productivity, which in turn will increase the chance of a Material Adverse Effect occurring and thereby giving Brookfield the right not to close the transaction.  Finally, unreasonable delay imposes substantial unrecoverable costs on Forest City—costs and expenses of additional proxy solicitation/mailing and fees and costs of legal advisors and consultants.  *In re CheckFree Corp.*, 2007 WL 3262188, at *4 (Del. Ch. Nov. 1, 2007) ("Enjoining this $4.4 billion merger would impose significant costs on … shareholders … in the form of the lost time value of money and lost opportunity costs . . . [and] the public interest requires an especially strong showing where a plaintiff seeks to enjoin a premium transaction in the absence of a competing bid.").

As the Court in *NACCO* explained, "Simply put, delay[ing the vote] means further tactical moves, resulting in higher transaction and legal costs, resulting in a higher likelihood that a transaction favorable to [the company] and the shareholders (assuming they approve) will not occur."  *NACCO*, 2006 WL 3762090, at *9.  The Court should not reward plaintiff's delay by imposing those substantial costs on Forest City and its shareholders.

    **D.**    **An Injunction Is Against The Public Interest.**

While plaintiff claims that there is a public interest in disclosure, that is only true where a plaintiff has established the existence of material misstatements or omissions in need of correction.  *NACCO*, 2006 WL 3762090, at *10 ("Plaintiffs' claim that the public interest favors full disclosure to shareholders and that corporate transactions occur without material misrepresentations or nondisclosure of information. Because the Court does not find a likelihood of material misrepresentation or nondisclosure, this appeal to the public interest does not aid

Plaintiffs."); *Erickson* v. *Hutchinson Tech., Inc.*, 158 F. Supp. 3d 751, 763-64 (D. Minn. 2016) (collecting cases and noting that the public interest is not served by enjoining a premium generating transaction). As plaintiff cannot meet his burden on the merits, he similarly cannot show any public interest in additional disclosures.

Moreover, federal courts in Ohio have recognized the public interest in permitting business entities "to maintain procedures allowing for their shareholders to participate in the orderly governance of the entity," and allowing those "governing processes [to] proceed without judicial interference except in clear cases of abuse." *Unicorp Fin. Corp.* v. *First Union Real Estate Equity & Mortg. Invs.*, 515 F. Supp. 249, 263 (S.D. Ohio 1981) (injunction of shareholder vote against the public interest). Forest City's shareholders should be permitted to participate in the governance of their company, and the shareholder vote should proceed as scheduled.

### E. A TRO Cannot Be Issued Without A Very Substantial Bond.

No injunction can issue without ample protection for Forest City and its shareholders. "The court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined ...." FED. R. CIV. P. 65(c). The bond must be sufficient to pay the costs and damages sustained by the wrongfully enjoined party because a wrongfully enjoined defendant has no action for damages in the absence of a bond. *W.R. Grace & Co.* v. *Local Union 759*, 461 U.S. 757, 770 n.14 (1983). "When setting the amount of security, district courts should err on the high side." *Mead Johnson & Co.* v. *Abbot Lab.*, 201 F.3d 883, 888 (7th Cir. 2000).

Here, plaintiff attempts to stop a $6.9 billion merger that was the product of careful consideration and negotiation between the parties and is poised to deliver substantial value to the

two companies and their stockholders.  If the merger does not close, Forest City stockholders would lose over $1.4 billion in cash, based on the 26% premium that Brookfield will pay for Forest City's shares, and may lose more if the share price declines below the pre-announcement level.  That is a tremendous loss compared to the nonexistent harm plaintiff faces if the shareholder vote proceeds, especially when no alternative exists for stockholders to fall back on.

**III. Plaintiff's Requested Relief Is Overbroad.**

In addition to seeking additional disclosures, plaintiff asks the Court to delay the vote by 30 days and reset the record date.  Compl. Prayer for Relief (a).  Resetting the record date (*i.e.*, changing the date on which a stockholder must hold shares to be eligible to vote those shares) has no relationship to additional disclosures.  Plaintiff's reasons for seeking that relief, however, are clear.  Plaintiff brought this litigation because he knew that public shareholders were about to approve the transaction.  By seeking to reset the record date, plaintiff hopes to disenfranchise thousands of shareholders who have already voted and allow a new set of voters—a set plaintiff hopes may be more favorable to his views—to determine Forest City's fate.

Thus, no matter how the Court rules on the merits of any of plaintiff's disclosure claims, the Court should not reset the record date and thereby artificially change the playing field.

**IV.  CONCLUSION**

For the foregoing reasons, plaintiff's motion should be denied.

Respectfully submitted,


*/s/      Brian J. Lamb*
Brian J. Lamb (0055447)
Brian.Lamb@ThompsonHine.com
Kip T. Bollin (0065275)
Kip.Bollin@ThompsonHine.com
Anthony J. Rospert (0076843)
Anthony.Rospert@ThompsonHine.com
Thomas M. Ritzert (0085370)
Thomas.Ritzert@ThompsonHine.com
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 4114
(216) 566-5500 (Telephone)
(216) 566-5800 (Facsimile)

*Attorneys for Defendant*

## **LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(f), the undersigned counsel certifies that this memoranda

complies with the page limits set forth in Local Rule 7.1(f) for cases not assigned to a track.

*/s/     Brian J. Lamb*
Brian J. Lamb

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2018, I electronically filed the foregoing in the

United States District Court for the Northern District of Ohio using the CM/ECF system which

will automatically send e-mail notification of such filing to any counsel that has entered an

appearance.

*/s/     Brian J. Lamb*
Brian J. Lamb

*Counsel for Defendant*