**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERT B. RATNER, | ) | CASE NO. 1:18CV2605 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| FOREST CITY REALTY TRUST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT # 4) of Plaintiff Albert B. Ratner for Temporary Restraining Order, Preliminary Injunction and Other Injunctive Relief. For the following reasons, the Motion is denied.

**I. BACKGROUND**

On November 12, 2018, Plaintiff Albert B. Ratner filed his Verified Complaint for Temporary Restraining Order, Preliminary Injunction and Other Injunctive Relief. The lawsuit arises out of a proposed merger by which Brookfield Asset Management, Inc. would acquire Forest City for cash consideration of $25.35 per share of common stock, reduced by

the per share amount of any quarterly cash dividend that may be declared and paid prior to consummation of the merger. On September 21, 2018, Forest City publicly filed a preliminary proxy statement with the Securities and Exchange Commission ("SEC"). A definitive Proxy Statement was filed with the SEC and mailed to stockholders on October 12, 2018. At that time, Forest City announced that a special meeting would be held on November 15, 2018, for a vote on the merger proposal. On October 25, 2018, Plaintiff issued an open letter to shareholders, announcing his intention to vote all of the Forest City shares he controls against the pending acquisition by Brookfield and urging fellow shareholders to do the same. Plaintiff cited his concerns with the price and timing of the deal and with the Board's approval process, and noted that other strategic alternatives could generate greater value for the company. On October 30, 2018, Forest City filed its Form 10-Q disclosing third quarter earnings which were exceptionally strong and incorporated that statement by reference into the Proxy Statement. The instant lawsuit was filed on November 12, 2018 and the Motion for Temporary Injunction was filed on November 13, 2018, two days before the scheduled shareholder meeting.

Plaintiff asserts that Forest City's Proxy Statement contained misleading statements and omitted material information in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9. He alleges that: (1) Forest City misstated the actual value of the merger consideration of $25.35 per share, by omitting information about the Company's strong financial performance and the loss to the stockholders of expected dividends; (2) Forest City omitted significant details about the reasons five directors voted against the merger and the circumstances surrounding the "extraordinary" seven-to-five vote; (3) Forest City omitted

details about the timing of the Brookfield bid in relation to the Board's reconstitution; (4) Forest City omitted the facts and circumstances surrounding CEO David LaRue's changed vote; (5) The Proxy Statement did not distinguish between the "old" and "new" Boards and lacked details regarding the limited expertise and experience of the directors voting in favor of the merger; (6) Forest City did not explain the decision to forego third-party appraisals of Forest City assets; and (7) Forest City did not disclose the forecasts provided to Brookfield nor disclose the availability of new debt capital equal to or greater than the proposed debt financing by Brookfield. In light of all this, the shareholders could not possibly make an informed decision regarding the merger proposal.

Plaintiff seeks an order enjoining the special meeting and vote on the merger proposal scheduled for November 15, 2018, until thirty days after Forest City mails a corrected Proxy Statement in compliance with SEC Rule 14a-9 and resets the record date.

## II. LAW AND ANALYSIS

**Standard of Review**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F.3d 1100, 1109 (6th Cir. 1995) (the

four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007). While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence. *See Deck v. City of Toledo*, 29 F. Supp.2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968). Clear and convincing evidence must produce a firm belief about the facts to be proved. It must be more than evidence that simply outweighs or overbalances the evidence opposed to it.

The purpose of a preliminary injunction is to preserve the status quo. *Procter & Gamble v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

**Section 14(a) of the Exchange Act and SEC Rule 14a-9**

SEC Rule 14a-9, as promulgated under Section 14(a) of the Exchange Act, does not mandate the disclosure of any particular information. As 17 C.F.R. § 240.14a-9 recites in pertinent part: "No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

"Disclosure of an item of information is not required [under section 14(a) and Rule 14a-9] . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik*

*v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). Rather, "federal courts have held that in order to sufficiently allege the elements of an omission claim under § 14(a) . . . the plaintiff must identify a precise "statement" in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact." *Louisiana Mun. Police Employees Retirement System v. Cooper Industries*, No. 12CV1750, 2012 WL 4958561, at *8 (N.D.Ohio Oct.16, 2012), citing *Hysong v. Encore Energy Partners LP*, Case No. 11-781, 2011 WL 5509100, at *8 (D.Del. Nov. 10, 2011).

Discussing *Hysong*, the *Louisiana Mun. Police Employees Retirement System* court noted :

> The court held that plaintiff's allegations — that defendants filed a materially misleading and incomplete registration statement because the statement omitted allegedly material information about the sales process, the consideration, and the true intrinsic value of the company rendering unitholders unable to cast an informed vote — were insufficient to state a claim. The court held that, even though the plaintiff desired to know more alleged "material " information about the transaction, in order to adequately plead a claim based on a "materially misleading omission," the plaintiff was required to allege that defendants omitted to state a material fact that made other statements in the proxy false or misleading. *Id*. at *9.

Even though a plaintiff may want more information, he is only entitled to that information mandated by Rule 14a-9. *See Louisiana Mun. Police Employees Retirement System*, at *10; *Hysong* at *8.

Similarly, Plaintiff Ratner's assertion (Plaintiff's Motion, ECF DKT #4 at 23) that the omissions "taken together . . . represent a gaping hole in the information presented to the stockholders," is vague, conclusory and insufficient to allege a viable omission disclosure claim under Section 14(a) of the Exchange Act.

The evidence presented to the Court demonstrates that the information which Plaintiff

believes would be "material" to Forest City shareholders was available prior to the scheduled meeting. Plaintiff's open letter, pointing out his concerns with the price, timing and process of the merger, was disseminated on October 25, 2018. On October 30, 2018, Forest City publicized its Form 10-Q announcing favorable third quarter earnings. Plaintiff's Verified Complaint was publicly filed on November 12, 2018 and his Motion for Injunctive Relief followed on November 13, 2018. Thus, prior to November 15, 2018, any interested shareholder could investigate whatever facts would weigh into an informed vote on the merger.

Moreover, if any shareholder returned a proxy or voting instruction card immediately after receiving the Proxy Statement but had "second thoughts" after hearing Plaintiff's allegations, all was not lost. The written Proxy Statement provided a shareholder the right to revoke a proxy or change a vote on the website, by telephoning via an "800" number, by delivering a subsequently-executed proxy or by delivering a written revocation to the Corporate Secretary by 11:59 p.m. on November 14, 2018.

Therefore, Plaintiff has not met his burden of showing a violation of the Exchange Act such that the shareholder vote should be halted. The Court finds that Plaintiff has not shown, by clear and convincing evidence, a strong likelihood of success on the merits of his claims in his Verified Complaint.

**Irreparable Harm**

Plaintiff's primary focus in this lawsuit is the amount of compensation coming to Forest City shareholders as a result of the merger with Brookfield.

In his open letter of October 25, 2018, Plaintiff complains that the "deal price is wrong

for Forest City shareholders, on many counts, and provides a bounty of additional value to Brookfield without any compensation to Forest City shareholders." (ECF DKT #1-4 at 6).

In his Verified Complaint, Plaintiff alleges that the "new" Board lacked the adequate understanding necessary to "determine that the deal was the best available alternative." (ECF DKT #1 at ¶ 6). Plaintiff alleges that CEO LaRue changed his vote without providing an "an explanation regarding why he did so without attempting to negotiate a higher price." (*Id*. at ¶ 7). Plaintiff questions whether the "new" Board considered "any other strategic options to unlock stockholder value." *(Id*.). Plaintiff claims that "the Proxy Statement failed to disclose that if the merger were approved, the stockholders would lose an additional $2.26 per share in value." (*Id*. at ¶ 9).

Further, Plaintiff argues that if the vote goes forward, the shareholders "will forever lose the opportunity to explore the value of their shares in the open market." (Plaintiff's Motion, ECF DKT #4 at 24). "Mr. Ratner will also suffer irreparable harm because he cannot possibly calculate ***what he would have received in value for his shares in the future*** if the Merger Proposal is approved." (Emphasis added). (*Id*. at 25).

Forest City rightfully points out that Plaintiff could pursue a post-closing damages claim for undervalued or inadequate stock valuation. In that instance, Plaintiff could be awarded monetary relief, albeit at a later date.

Plaintiff has failed to demonstrate, by clear and convincing evidence, that he will suffer irreparable injury in the absence of injunctive relief.

**Potential for harm to Defendant and to the public**

Plaintiff waited to the very eve of the shareholder meeting to bring his action for an injunction. Plaintiff could have sued two weeks prior when he disseminated his open letter. At that time, he was able to articulate many of his concerns over the potential merger proposal. The only information he lacked was the Forest City earnings figures for the third quarter which were published five days after his letter.

Plaintiff admits that he "could have theoretically initiated a 'proxy-fight' when the Proxy Statement was issued." (Plaintiff's Motion, ECF DKT #4 at 24). He claims that he was "lulled into refraining from initiating a proxy contest until it was too late to feasibly do so." (*Id*. at 25).

Instead of taking either step of initiating a proxy contest or filing a lawsuit after receiving the Proxy Statement, Plaintiff waited until three days before the shareholder meeting to sue.

The Court recognizes the public interest in allowing corporate entities, licensed by the state of Ohio, to operate according to their governing principles and procedures.

In addition, the Court cannot ignore the expense Forest City would incur for additional proxy solicitations and mailings if the vote were enjoined.

Plus, the arrangement with Brookfield is the only deal on the table. There are no rival bids. Any delay could cause Brookfield to lose its financing or make it so unfavorable that Brookfield would walk away. These scenarios could hurt the shareholders, even more than they may be hurt by what Plaintiff describes as this "ill-conceived" transaction with Brookfield.

**Status quo**

Plaintiff contends that he only wants to maintain the status quo until all the material information is provided to the shareholders. However, Plaintiff asks the Court to order the vote delayed and the record date re-set. Re-setting the record date means a change in the date on which a shareholder is eligible to vote the shares he or she holds. This alteration would not serve to maintain the status quo.

### III. CONCLUSION

For these reasons, the Court finds that Plaintiff Albert B. Ratner has failed to establish irreparable harm and a strong likelihood of success on the merits by clear and convincing evidence. The balancing of the equities between Plaintiff's interests and the interests of Forest City and of the public weighs against granting injunctive relief. Therefore, the Motion (ECF DKT # 4) of Plaintiff Albert B. Ratner for Temporary Restraining Order, Preliminary Injunction and Other Injunctive Relief is denied.

**IT IS SO ORDERED.**

                                              s/ Christopher A. Boyko
                                              **CHRISTOPHER A. BOYKO**
                                              **United States District Judge**

**Dated: November 26, 2018**